UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | CASE NO. 1:21-cr-00124-TSB |
| PLAINTIFF, | : | |
| | : | JUDGE BLACK |
| V. | : | |
| | : | **DEFENDANT'S SENTENCING** |
| NICHOLAS V. BONAVITA, | : | **MEMORANDUM** |
| | : | |
| DEFENDANT, | : | |

Now comes Defendant, Nicholas V. Bonavita (hereinafter "Defendant" or "Bonavita"), by and through undersigned counsel, and hereby presents the following relevant information for this Honorable Court's consideration in determining a reasonable sentence to impose upon Defendant. For the reasons set forth below, we respectfully submit that Defendant be considered for a deviation down from the sentencing Guidelines.

**I.  Procedural Background**

In addition to the facts listed in the Presentence Investigation Report (PSR): On July 8, 2020, Defendant possessed an image of child pornography. The United States Attorney's Office filed a one count Information against Bonavita on November 22, 201. Defendant subsequently entered a Plea of Guilty on February 10, 2022 to the one count Information. This Honorable Court accepted the Defendant's plea of guilty on that same day.

**II.  Sentencing Guidelines**

Pursuant the United States Sentencing Guidelines, Defendant falls under a criminal history in Category 1 and an offense level of 33. Defendant is entitled to a 3 point deduction for his complete acceptance of responsibility. The end offense lever totals 30. This would typically

1

result in an advisory sentencing guideline range of 97 months to 121 months; However, Defendant's guidelines are reduced to the statutory maximum of 120 months in prison.

In *United States v. Booker*, 543 U.S. 220 (2005), the Supreme Court held that the mandatory Sentencing Guidelines system violated the Sixth Amendment. Therefore, pursuant to *Booker*, the Sentencing Guidelines are advisory. The Guidelines must be properly calculated and considered, but ultimately the Court must craft a sentence that sufficiently accounts for the sentencing factors and objectives outlined in 18 U.S.C. §3553 (a). *Gall v. United States*, 552 U.S. 38, 49-50 (2007). The factors to be considered under 18 U.S.C. §3553 (a) include the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence to reflect the seriousness of the offense, the need to deter the defendant and others, as well as the need to protect the public from the defendant's crimes, and the need to provide the defendant with the needed treatment in the most effective manner.

**A. Nature and Circumstances of the Offense and History and Characteristics of the Defendant**

The first factor, which is a critical component of any practical sentencing rule is to consider the nature and circumstance of the offense in addition to a defendant's history and characteristics.

Defendant is 30 years of age. He has never been married and has no children. Defendant is employed by Lifemade as an extruder operator and has maintained that employment since February 2020. He currently makes $23.00 an hour based upon a recent raise. Upon his arrest Bonavita resided in a small trailer both with and owned by his grandparents. Defendant's uncle was also living in the home. Defendant gave his grandparents the bulk of his meager income to assist with their collective bills. After a search warrant was conducted on the home, Defendant

decided to move out of the home so his grandparents did not have to endure more embarrassment which was attributed to Defendant's actions.  However, Defendant continued to provide his grandparents financial assistance even when his own income was meager.  Many years ago Defendant's grandparents literally saved his life by rescuing Defendant from Defendant's mother.  His grandparents did all they could, with the minimal resources available to them, to provide Defendant an opportunity for a normal, non-abusive life.  At this moment, and into the future as far as this Honorable Court will allow, Defendant will continue to provide financial assistance to his grandparents. Defendant is extremely grateful for the opportunity of normality his grandparents offered him and this is the least Defendant can do in return.  It is important to understand the depth of Defendant's gratitude toward his grandparents for being rescued.  As an example, Defendant did not accept health insurance from his employer because the cost of this insurance would take money he had available for his grandparents.  Defendant forewent his own health to assist his grandparents financially.

    What is about to be written will be difficult, if not impossible for Defendant to articulate to this Honorable Court if Defendant is questioned about such.  Defendant is a product of horrific sexual abuse and violence.  The scarring on his body reminds him every day of the extreme violence Defendant endured.  Defendant has suffered many broken bones.  He lost so much blood in one incident as a child the doctor chastised his mother for Defendant nearly dying from blood loss as she delayed seeking medical attention.  He can show this Honorable Court the scar associated with this violent encounter.  There were so many instances of physical violence upon Defendant he cannot recall many instances as they all run together in his mind.  He can remember specific events as he can associate certain scarring with certain instances of violence.  None of this includes the sexual abuse Defendant sustained.

It appears Defendant's mother and father were addicts. This conclusion is reached as Defendant can now piece information together from looking back on his life. However he only lived with his father with Defendant's father's parents, for one month. After that month Defendant was abandoned again. When Defendant lived with his mother, she changed living locations on a regular basis to avoid child services from rescuing Defendant. She was completely successful in every one of these efforts. Defendant was shielded from any outside help until Defendant's grandparents intervened. As an addict, Defendant's mother prostituted Defendant out to men. Defendant had regular encounters with certain men and minimal encounters with others. Again, they run together in Defendant's mind. Without going into detail, it is obvious the extent of trauma Defendant endured at the hands of his parents and mainly his mother.

Defendant has no sexual interest in children. This is an odd statement as this case is precisely about the sexual exploitation of children. Defendant explained this irrational oddity by a simple statement: "It helped me remember."

Defendant fully understands and accepts he was wrong. There is no doubt Defendant was wrong. By way of simple mitigation, and not an excuse for wrongdoing, Defendant never had the option of seeking third party assistance. As a child he was intentionally isolated from the outside world. There was no one to assist him. The system failed Defendant in the system's own basic mission. As an adult Defendant did not have the resources to afford professional help. Essentially Defendant self-medicated. Normally this behavior relates to drugs or alcohol. This is not the case as Defendant does not have an interest in either. He does not want to be the same addict his parents were. Therefore, he does not self-medicate in the manner. Defendant self-medicated for his mental anguish by viewing child pornography. Again, Defendant's actions

4

were not lawful or proper in any way. His actions simply were what they were. He is a man that understands a life of pain and violation. Defendant's actions were not acceptable, but they should be considered understandable given the suffering and trauma Defendant endured.

Having given due consideration to a defendant's history and characteristics and the nature and circumstances of the offense, the Court must identify a sentence that reflects the seriousness of the offense, promotes respect for the law, provides a just punishment for the offense, affords adequate deterrence to criminal conduct, and protects the public from further crimes of the defendant, though "a particular purpose may apply differently, or even not at all, depending on the kind of sentence under consideration." *Tapia v. United States*, U.S. 131 S. Ct. 2382, 2387-88 (2011). It is requested of this Honorable Court to pay particular attention to the words "or even not at all. . ." when sentencing this Defendant.

### B. The Seriousness of the Offense, the Need to Deter Defendant and the Need to Protect the Public

The second factor requires a consideration of the general purposes of sentencing, which is the imposition of a sentence reflecting the seriousness of the offense, promoting respect for the law, and providing "just punishment" as well as specific deterrence. *United States v. Kimbrough*, 128 S. Ct. 570 (2007). While we appreciate the facial attraction of the general deterrence theory, we respectfully submit that whatever sentence is imposed here will have little impact on others engaging in criminal conduct. See Kittrie, et al., *Sentencing, Sanctions, and Corrections: Federal and State Law, Policy, and Practice*, 29 (2d ed. 2002). The weakness of general deterrence theory is underscored by its reliance on the flawed "underlying assumption that people weigh rationally the consequences of their behavior". Arthur W. Campbell, *Law of Sentencing* § 2:2 (2d ed. 1991).

The more imperative and relevant consideration in our case should be specific deterrence and its sister aim of reducing recidivism.  Defendant has a nominal criminal record and is at an inherently low risk for recidivism.  Also, as will be identified shortly, there is significant evidence Defendant has already been deterred and such behavior will not occur in the future.  Due to the historical evidence about the Defendant, a prison sentence is unwarranted.

It is also widely recognized that shame and humiliation associated with an arrest and the uncovering of private behavior, distinguishes sex offenders from other categories of defendants.  In other words, the mere uncovering of the conduct itself tends to result in lower recidivism rates:

> More than with any other class of offender, getting caught leaves sex offenders humiliated, shamed and shaken to the core.  Being hand-cuffed and hauled away from decent society is a shattering experience for anyone, but it all the more electrifying and soul-stripping when the nature of the offense is as intimate and shameful a secret as is a sex crime.  Eric Lotke, *Politics and Irrelevance: Community Notification Statutes*, 10 Fed. Sent. Rprtr. 64 (Sept./Oct. 1997).

Because Defendant faces both the prospect of having to register as a sex offender with all the conditions and requirements attached to registration, treatment and rehabilitation is what is necessary to reform his conduct, reduce the risk of relapse, and prevent any possibility of recidivism.  To the extent that rehabilitation is to be achieved through the sanction imposed here, the law recognizes that imprisonment is not a proper vehicle to such an end.  *Tapia*, 131 S. Ct. at 2390, ("…do not think about prison as a way to rehabilitate an offender.").

Through his guilty plea, Defendant demonstrated that he was willing to both admit and accept responsibility for his crime.  Furthermore, on the day Defendant's residence was searched, law enforcement advised Defendant he was not under arrest and did not have to speak with officers; however, Defendant voluntarily submitted to an interview, fully complied and cooperated with their questioning.  Defendant was subsequently contacted by the Government

6

for more information and has fully complied with every request made of him. He has also been out on both supervised and unsupervised release since the day the search warrant was issued, July 8, 2020 with no issues. We further submit that because of his willingness to be cooperative and follow the Court's strict rules with respect to release conditions, whatever treatment Defendant is to receive, it is better provided in the community than in prison.

Throughout the pendency of this matter, it has come to light the Defendant was contacted by a third person, believed to be law enforcement, approximately one-year before the search warrant was issued. This contact was made to question Defendant about his potential use/possession of child pornography. No charges were filed and nothing came of this contact other than the Defendant's complete stoppage of using/possessing child pornography. It appears undisputed there is no evidence of Defendant's use/downloading child pornography for approximately one-year before the search warrant was executed (from the date of this encounter forward). However, there should be no confusion that the Defendant did legally possess child pornography on the above stated date as it was still on his computer devices. The distinction is the Defendant did not access these images, nor did he download any other images during the prior year. The deterrent effect worked.

If the deterrent effect worked without formal charges even being filed, and Defendant has been fully compliant with this Honorable Court since charges have been filed, it is a logical conclusion the complete deterrent effect has been embedded into the Defendant. Defendant is no longer a threat to society. Any further punishment on Defendant would purely be punitive in nature and also unnecessarily punitive. It is respectfully requested any additional punishment placed upon Defendant be lenient as all outcomes desirous of the criminal justice system have already been met.

### III. Guidelines Manual

As this Honorable Court is aware, the guideline for an 18 U.S.C. §2552A(a)(5)(B) offense is located in the §2G2.2 of the Guideline's Manual. According to the United States Sentencing Commission (USSC), a decision to review the §2G2.2 for reformulation reflects a recognition that §2G2.2 does not reflect national experience, and over-punishes the typical offender. In June of 2021 the USSC published an updated examination of child pornography offenses due to Congress not authorizing the Commission to revise §2G2.2 to eliminate outdated guideline enhancements as previously recommended through the USSC's 2012 *Child Pornography Report*.

As published in the 2021 report, a central theme of the 2012 *Child Pornography Report* remains accurate: the sentencing enhancements in §2G2.2 do not reflect the technological advancements of today's society.

> Facilitated by technology, child pornography offenses increasingly involve images in great quantities and of a graphic nature, often depicting the youngest of victims. These factors are already accounted for in §2G2.2 by a series of enhancements that were initially added to target more serious offenses and more culpable offenders. However, the conduct covered by four of the six enhancements—accounting for a combined <u>13 offense levels</u>—has become so ubiquitous that they now apply in the vast majority of cases sentenced under §2G2.2. United States Sentencing Commission June 2021: *Federal Sentencing of Child Pornography Non-Production Offenses.*

The USSC further concluded again that significant sentencing disparities among similarly situated defendants still exist due to the outdated statutory and guidelines penalty structure. While the Guidelines have ceased to be modified, even with the USSC's recommendations, the decision maker is tasked with determining how much weight under 18 U.S.C. §3553(a)(4) and (5) should the Court give Guideline §2G2.2? It is anticipated the Government will urge the Court to presume the Guidelines are reasonable; However, research has proven the one-size fits all approach to sentencing is archaic and inadequate.

8

**IV.	Sentencing Conclusion and Attachments**

In analyzing the above-mentioned factors, the sentencing court should consider the possibility that a Guidelines Sentence is not just necessary to accomplish the goals set forth in §3553 (a), but that such a sentence would be "greater than necessary". Alternatively stated, a Guidelines sentence will actually thwart application of §3553(a)'s command to impose the minimum sentence necessary to achieve the goals of sentencing. *Rita v. United States*, 127 S. Ct. at 577 (Scalia, J., concurring).

Defendant does merit a downward variance from his advisory guideline range. Many child pornography possession cases result in downward variances from the Guidelines due to the belief that, "tough sentences in these cases are punishing a defendant for something he or she has not yet done – and may never do – actual contact with children." *United States v. Marshall*, 870 F. Supp. 2d 489, 491 (N.D. Ohio 2012).

In light of Defendant's history and characteristics, the totality of circumstances surrounding his offense conduct, and the individualized considerations set forth above, as well as any other reasons that may be deemed appropriate and just, we respectfully request that the court impose a sentence that is sufficient but not greater than necessary to meet the ends of justice.

                                                  Respectfully Submitted,

                                                  /s/ Adam Boyd Bleile
*Attorney for Defendant*
Bleile & Dawson
810 Sycamore Street, 5th Floor
Cincinnati, Ohio 45202
(P) 513-564-0088
(F) 513-263-9089
adamtheattorney@yahoo.com

## CERTIFICATE OF SERVICE

 I hereby certify that on January 6, 2023, I electronically filed the foregoing Sentencing Memorandum through the ECF system, which will send a notice of electronic filing to all parties of interest.

/s/ Adam Boyd Bleile